Whyte v Fresh Meadows Home Improvement Inc. (2025 NY Slip Op 51719(U))

[*1]

Whyte v Fresh Meadows Home Improvement Inc.

2025 NY Slip Op 51719(U)

Decided on October 27, 2025

Supreme Court, Queens County

Caloras, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on October 27, 2025
Supreme Court, Queens County

Judith Whyte, Plaintiff,

against
Fresh Meadows Home Improvement Inc., and Premium Adjusters Inc., Defendants.

Index No. 709551/2021

Cory M. Barkoff, Esq. 
MARKOWITZ & BARKOFF, P.C.
Attorneys for Plaintiff 
575 Jericho Turnpike, Suite 210 
Jericho, NY 11753
Phone number: (516) 935-3500
Email address: [email protected]
Jean M. Smyth, Esq. 
Campanelli & Associates, P.C.
Attorneys for Defendant Premium Adjusters, Inc. 
1757 Merrick Avenue, Suite 204 
Merrick, New York 11566 
Phone number: (516) 746-1600
Email address: [email protected]
Joseph C Schioppi, Esq. 
Attorney for Defendant Fresh Meadows Home Improvement, Inc. 
123-35 82nd Road 
Kew Gardens, New York 11415
Phone number: (718) 263-7800
Email address: [email protected]

Robert I. Caloras, J.

The following e-filed documents, listed by NYSCEF under the motion as: 53- 88, were read on the motion by defendant, Premium Adjusters, Inc. (Premium) for summary judgment, pursuant to CPLR 3212, and cross-motion by plaintiff for summary judgement against [*2]defendant.
Upon the foregoing papers it is ordered that plaintiff's motion, and defendant's cross-motion, are determined as follows:
Plaintiff was, and remains, the owner of property 226-10 141st Avenue, Laurelton, New York, which was damaged in a fire on or about January 2, 2019. Plaintiff submitted an insurance claim for damages to State Farm Insurance Company, the insurer of the property. Plaintiff claims that on January 13, 2019, plaintiff and defendant Premium entered into a written compensation agreement (the Compensation Agreement) authorizing Premium to act as her public adjuster in the fire loss claim, specifying Premium's duty "to aid and act in preparation, presentation, adjustment and negotiation of plaintiff's insurance claim" arising from the fire loss, for a fee of five percent of the amount recovered from State Farm.
On or about May 1, 2019, plaintiff and defendant, Fresh Meadows Home Improvement, Inc. (Fresh Meadows) entered into a construction agreement, whereby Fresh Meadows agreed to repair the damages to plaintiff's property, and agreed to accept the "insurance proceeds, net of any public adjuster fees, as full consideration for the work to be completed by . . . Fresh Meadows." Plaintiff asserts that in early June 2019, Premium submitted a Proof of Loss form to State Farm on behalf of plaintiff, and, on July 15, 2019, State Farm paid to plaintiff "the amount of $304,389.39 pursuant to the settlement negotiated by Premium." Premium was paid a total of $7,851.64 as its fee.
Between October 2019 and February 2020, plaintiff claims she personally advanced payments, totaling $30,000.00, to Fresh Meadows "relying on . . . representations . . . by Tori Kelly of Premium that if I advanced any funds to the contractor, I would be reimbursed in full from the insurance proceeds by Fresh Meadows." Plaintiff further claims that Fresh Meadows only returned $9,000.00, of the $30,000.00 laid out by plaintiff, and failed to "complete" items of repair in the original scope of employment contract entered between them, owing her a total of "$26,950.00," for which she brought this complaint against Fresh Meadows. Plaintiff also claims that Premium "abandoned" the public adjuster contract between them, without completing its duty to her, and included a cause of action against Premium for breach of contract.
This motion by Premium seeks, among other things, summary judgment dismissing the Second Cause of Action, asserting the breach of contract claim against Premium. Plaintiff opposes, and cross-moves for summary judgment on liability, seeking, confusingly, "judgment to State Farm in the amount of $26,950.00 for breach of contract by defendant, Fresh Meadows, and breach of fiduciary duty and breach of contract by defendant, Premium."
"[T]he proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact" (Ayotte v Gervasio, 81 NY2d 1062, 1063 [1993], citing Alvarez v Prospect Hospital, 68 NY2d 320 [1986]; see Schmitt v Medford Kidney Center, 121 AD3d 1088 [2d Dept 2014]; Zapata v Buitriago, 107 AD3d 977 [2d Dept 2013]). On plaintiff's motion for summary judgment, the evidence should be liberally construed in a light most favorable to the non-moving defendants (see Monroy v Lexington Operating Partners, LLC, 179 AD3d 1053 [2d Dept 2020]; Rivera v Town of Wappinger, 164 AD3d 932 [2d Dept 2018]: Boulos v Lerner-Harrington, 124 AD3d 709 [2d Dept 2015]). Summary judgment "should not be granted where the facts are in dispute, where conflicting inferences may be drawn from the evidence, or where there are issues of credibility" (Collado v Jiacono, 126 AD3d 927 [2014]), [*3]citing Scott v Long Is. Power Auth., 294 AD2d 348, 348 [2002]; see Charlery v Allied Transit Corp., 163 AD3 914 [2d Dept 2018]; Chimbo v Bolivar, 142 AD3d 944 [2d Dept 2016]; Parietti-Fogarty v Fogarty, 141 AD3d 512 [2016]). Credibility issues regarding the circumstances of the subject incident require resolution by the trier of fact (see Bravo v Vargas, 113 AD3d 579 [2014]; Martin v Cartledge, 102 AD3d 841 [2013]), and the denial of summary judgment.
The essential elements of a cause of action for breach of contract include, first and foremost, "the existence of a contract" (Davydov v Youssefi, 205 AD3d 879, 880 [2d Dept 2022]; see Ripa v Petrosyants, 203 AD3d 768 [2d Dept 2022]; WMC Realty Corp. v City of Yonkers, 193 AD3d 1018 [2d Dept 2021]). "To create a binding contract, there must be a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms. Generally, the courts look to the basic elements of the offer and acceptance to determine whether there is an objective meeting of the minds sufficient to give rise to a binding and enforceable contract" (Petkanas v Petkanas, 191 AD3d 708, 711 [2d Dept 2021], quoting Agosta v Fast Svs. Corp., 136 AD3d 694, 694 [2d Dept 2016] [internal quotation marks omitted]; see Hershkowitz v Wesley Hills Ctr., LLC, 203 AD3d 1031 [2d Dept 2022]). "In determining whether the parties entered into a contractual agreement and what were its terms, it is necessary to look ... to the objective manifestations of the intent of the parties as gathered by their expressed words and deeds" (Petkanas v Petkanas, 191 AD3d at 711, quoting Brown Bros. Elec. Contrs. v Beam Constr. Corp., 41 NY2d 397, 399 [1977]).
" 'The fundamental, neutral precept of contractual interpretation is that agreements are construed in accord with the parties' intent' . . . . [t]he best evidence of the parties' intent is their own writing . . . . A written agreement that is complete, clear, and unambiguous on its face is to be enforced according to the plain meaning of its terms" (Goetz v Trinidad, 168 AD3d 688, 689 [2d Dept 2019], quoting Greenfield v Philles Records, 98 NY2d 562, 569 [2002]; see Ellington v EMI Music, Inc., 24 NY3d 239, 244 [2014]; Silberman v Farkas, 179 AD3d 1075 [2d Dept 2020]; Osborne v Williamson Law Book Co., 175 AD3d 1311 [2d Dept 2020]). "Where the terms of a contract are clear and unambiguous, the intent of the parties must be found within the four corners of the contract, giving a practical interpretation to the language employed and reading the contract as a whole" (Tomhannock, LLC v Roustabout Resources, LLC, 33 NY3d 1080, 1082 [2019], quoting Ellington v EMI Music, Inc., 24 NY3d at 244; see Long Is. Med. & Gastroenterology Assoc., P.C. v Mocha Realty Assoc., LLC, 191 AD3d 857 [2d Dept 2021]; World Ambulette Transp., Inc. v Lee, 161 AD3d 1028 [2d Dept 2018]).
Premium's motion for summary judgment dismissing the complaint as against it is, prima facie, granted, as its evidence proffered "demonstrate[s] the absence of any material issues of fact" (Ayotte v Gervasio, 81 NY2d 1062, 1063, citing Alvarez v Prospect Hospital, 68 NY2d 320; see Schmitt v Medford Kidney Center, 121 AD3d 1088; Zapata v Buitriago, 107 AD3d 977). Such evidence is based largely upon the January 13, 2019 Public Adjuster Compensation Agreement, signed by plaintiff and Tori Kelly, on behalf of Premium; the five-page Affirmation in Opposition of plaintiff, signed on June 10, 2025; the October 11, 2022 deposition transcript of plaintiff; and the June 10, 2025 Statement of Material Facts, pursuant to CPLR 3212 (g), submitted on behalf of plaintiff "by her attorney, Cory M. Barkoff, Esq."
The Compensation Agreement states, in no uncertain terms, that Premium was retained by plaintiff to prepare, present, adjust, negotiate, and settle "the claim from the loss or damage by peril sustained" to the property, made to State Farm, plaintiff's insurance company. Plaintiff [*4]admits same in her Statement of Material Facts, at ¶¶ 4 through 7, and in her Affirmation in Opposition, at ¶¶ 5 through 8, stating, in each document, that Premium was "to serve as my (or her) public adjuster."
Premium has demonstrated that it began negotiations for settlement of the State Farm damage claim in January 2019, and that "State Farm issued its final settlement determination" in the amount of $304,248.17, which was accepted by, and paid to, plaintiff. Premium contends that, upon the payment to it of the negotiated public adjuster fee, its obligation to plaintiff terminated. Premium states that, thereafter, it received notifications from plaintiff with complaints against Fresh Meadows, pertaining to the progress of the repairs, which Tori Kelly responded to, and who met with plaintiff personally, offering to, gratis, submit a further "list of personal property that could not be salvaged after restoration attempts and personal property items that were in storage" to State Farm. However, at no time did Premium concede that it was responsible for any further action pursuant to the Compensation Agreement herein, and Premium has demonstrated, prima facie, entitlement to summary judgment dismissing the Second Cause of Action herein.
As such, Premium has demonstrated that it was retained solely to provide public adjuster services, and had no contractual responsibility to assist plaintiff with any obligations relating to the repairs to the subject property, as evidenced by the separate contract entered into between plaintiff and defendant, Fresh Meadows. Plaintiff has failed to identify any provision of the subject Compensation Agreement breached by Premium, alleging only a "provision" that does not exists therein.
In opposition, plaintiff has failed to refute plaintiff's presentation of evidence, insisting, without proof, that Premium contracted to assist plaintiff with the completion of the repair work by Fresh Meadows. Plaintiff's pleadings, fact statements, testimony, and opposition papers describe a cause of action against Fresh Meadows for money owing, and unpaid, to plaintiff, for work contracted to be done, and unfinished by Fresh Meadows, and from amounts paid to Fresh Meadows by plaintiff, and un-reimbursed for such advance payments made to Fresh Meadows. With regard to such advanced payments, plaintiff alleges that Tori Kelly of Premium "repeatedly . . . . assured" her that she would be "reimbursed in full by Fresh Meadows" for any advance payments she might make to the contractor, and then Premium "abandoned" plaintiff after she made advances of $30,000.00 to Fresh Meadows, which plaintiff claims were only partially reimbursed. Plaintiff maintains that she would not have advanced any funds to Fresh Meadows, but for Kelly's 'assurances" that reimbursement would follow, and "relied upon" such assurances, forming the basis for the cause of action against Premium for "breach of fiduciary duty." However, despite declaring that there exist records of Premium's alleged "assurances," plaintiff has failed to proffer same. Instead, belying such accusation, plaintiff has testified, at her October 11, 2022 deposition, that "I have checks, text messages from Fresh Meadows saying that they—advancing—if I advance the money, they would turn around and pay it back to me." (p. 27, lines 22-25).
Liberally construing the evidence in a light most favorable to the nonmoving plaintiff (see Chojnacki v Old Westbury Gardens, Inc., 152 AD3d 645 [2017]; D'Esposito v Manetto Hill Auto Service, Inc., 150 AD3d 817 [2017]), Premium's prima facie entitlement to summary judgment dismissing the sole cause of action for breach of contract against it, has not been rebutted, and Premium's motion is granted.
Turning to plaintiff's cross-motion seeking summary judgment against defendant, [*5]Premium, "for breach of fiduciary duty and breach of contract," such branch of the cross-motion relating to an alleged "breach of contract" has been addressed above, and dismissed. The branch of the cross-motion relating to a judgment on Premium's alleged "breach of fiduciary duty" is denied, as untimely made.
Pursuant to CPLR 3212(a), "[a]ny party may move for summary judgment in any action, after issue has been joined; provided however, that the court may set a date after which no such motion may be made . . . . If no such date is set by the court, such motion shall be made no later than one hundred twenty days after the filing of the note of issue, except with leave of the court on good cause shown." (see Montes-Vidal v New York State Thruway Auth., 238 AD3d 1131 [2d Dept 2025]; Wittenberg v Long Is. Power Auth., 225 AD3d 730 [2d Dept 2024]). "An untimely motion or cross motion for summary judgment may be considered by the court where a timely motion was made on nearly identical grounds" (Sammy Props., Inc. v Al Saleh Assoc., LLC, 225 AD3d 815, 818 [2d Dept 2024], quoting Sikorjak v City of New York, 168 AD3d 778, 780 [2d Dept 2019]; see Cruz v 1142 Bedford Ave., LLC, 192 AD3d 859 [2d Dept 2021]). In the case at bar, the court did not specify an outside date after which a summary judgment motion must be made, and plaintiff's cross-motion was made without the "one hundred twenty day" statutory window. Further, the branch of the cross-motion seeking a judgment for Premium's "breach of fiduciary duty" cannot be said to have been made on "nearly identical grounds," as the original motion was based upon a complaint stating a single cause of action, for breach of contract, only. Thus, "[t]he plaintiff's failure to apply for leave to file the [cross-motion} and failure to establish good cause for its delay warranted denial of the [cross-motion] without consideration of its merits" (Wells Fargo, NA v Apt, 179 AD3d 1145, 1146 [2d Dept 2020]).
Moving defendant's, and plaintiff's remaining requests, contentions and/or arguments are either without merit or need not be addressed in light of the foregoing determinations.
Accordingly, defendant, Premium's motion, for summary judgment dismissing the sole cause of action commenced against it, is granted. Plaintiff's cross-motion, seeking summary judgment against Premium, is denied as untimely.
DATED: October 27, 2025
ROBERT I. CALORAS, J.S.C.